UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------- x
ADRIANA AGUILAR, INGRID PLACENCIA,
KETHI PATRICIA BRACERO, MANUELA
GONZALEZ, MARIA LORA, and MIGUEL
BECERRA MARTINEZ, *individually and on
behalf of others similarly situated*,

                      Plaintiffs,

               -against-

476 9TH AVENUE RESTAURANT, LLC (d/b/a
EL RANCHITO DEL AGAVE), MARIO SILVIA,
APOLINAR RAMIREZ, MICAELA BECERRIL,
NAOMI GURIDY, and MARIO RAMIREZ,

                      Defendants.
------------------------------------- x

MEMORANDUM DECISION
AND ORDER

15 Civ. 8684 (GBD)

GEORGE B. DANIELS, United States District Judge:

      Plaintiffs, former workers at El Ranchito Del Agave Restaurant, brought this action against Defendant 476 9th Avenue Restaurant, LLC (d/b/a El Ranchito Del Agave) and individual Defendants Mario Silvia, Apolinar Ramirez, Micaela Becerril, Naomi Guridy, and Mario Ramirez, alleging violations of the Fair Labor Standards Act ("FLSA"), 29 U.S.C. § 201 *et seq.*, and the New York Labor Law ("NYLL"). (First Am. Compl., ECF No. 26, at 4.) Defendants moved, pursuant to Federal Rule of Civil Procedure 56, for partial summary judgment on the issue of whether the commissions Plaintiffs received counted toward and satisfied the minimum wage requirements of the FLSA and NYLL.[1] (Defs.' Mot. P. Summ. J., ECF No. 57.) In opposition, Plaintiffs argue that summary judgment should instead be granted in their favor because Defendants' payment scheme violates New York state law.

      Defendants' motion for partial summary judgment is GRANTED.

---

[1] Defendants' motion does not apply to the claims of Plaintiff Becerra, who was employed as a waiter.

## I.   FACTUAL BACKGROUND

The parties do not dispute the basic facts underlying this motion.[2] Plaintiffs were all female employees of El Ranchito restaurant at various times between September 2011 and October 2015. (Pls.' 56.1 Stmt., ECF No. 66, ¶ 1.) Plaintiffs worked five or six nights per week, and generally worked between 11 PM and 4 AM, at times staying past 4 AM. (Defs.' 56.1 Stmt., ECF No. 61-1, ¶ 2); (Pls.' 56.1 Stmt. ¶ 2.) Plaintiffs' duties included entertaining the customers by conversing and dancing with them. (Pls.' 56.1 Stmt. ¶ 8.)

Instead of an hourly wage or salary, Plaintiffs received two other forms of pay. First, Plaintiffs were told they would be paid $30 each night that they showed up before 11 PM. (*Id.* ¶ 4.) Second, Plaintiffs received compensation based on a drink ticketing system, which is the subject of the present dispute. During their shifts at the restaurant, Plaintiffs would encourage customers to buy drinks, both for themselves and for the Plaintiffs. (Defs.' 56.1 Stmt. ¶ 8.) For each drink that a customer purchased for one of the Plaintiffs, the Plaintiff would go to the bar and receive a ticket. These drinks cost $20, of which $10 was paid out to Plaintiff at the end of the night. (Pls.' 56.1 Stmt. ¶ 8.) Plaintiffs admit that if they received no tips, and even if they did not receive the $30, they were still paid commissions for the drink sales. (*Id.* ¶ 10.) Further, even if Plaintiffs did not receive the $30 payment, "and not counting any tips they received from customers, they made, on average, at least $40 per night over 4-4.5 hours, and generally more than that – up to as much as $90 per night in drink sales." (*Id.* ¶ 9.)

On this motion, Defendants ask the Court to find that the commissions Plaintiffs received count toward and satisfy the minimum wage requirements under the FLSA and NYLL. (Defs.'

---

[2] In their Opposition Memo, Plaintiffs copied and pasted Defendants' description of El Ranchito's payment scheme and stated that there were "no disputed issues of fact as to plaintiffs' remuneration." (*See* Pls.' Mem. L. Opp. ("Opp. Mem."), (ECF No. 64), at 2-3.)

Mem. L. Supp. Mot. Summ. J. ("Defs.' Mem."), (ECF No. 60), at 2.) Their argument is basically that Plaintiffs were "commissioned salespersons" under New York law, that their ticket sales were commissions, and that those wages totaled more than the minimum wage within each pay period. In the alternative, Defendants also argue that Plaintiffs were independent contractors and thus not covered by the FLSA or NYLL.

In response, Plaintiffs argue that New York state law prohibits Defendants from employing Plaintiffs as commissioned salespersons and therefore any "commissions" were illegal. Accordingly, Plaintiffs argue that they were not fairly paid under the FLSA or NYLL.

## II. LEGAL STANDARD

Summary judgment is appropriate when there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. *See* Fed. R. Civ. P. 56(a). "An issue of fact is genuine "if 'the evidence is such that a jury could return a verdict for the nonmoving party.'" *Gayle v. Gonyea*, 313 F.3d 677, 682 (2d Cir. 2002) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)). A fact is material when "it 'might affect the outcome of the suit under the governing law.'" *Id.* (quoting *Anderson*, 477 U.S. at 248).

The party seeking summary judgment has the burden of demonstrating that no genuine issue of material fact exists. *See Marvel Characters, Inc. v. Simon*, 310 F.3d 280, 286 (2d Cir. 2002). In determining whether a genuine issue of material fact exists, the court must construe the evidence in the light most favorable to the non-moving party and draw all inferences in that party's favor. *See Niagara Mohawk Power Corp. v. Jones Chem., Inc.*, 315 F.3d 171, 175 (2d Cir. 2003). The court's task is not to "weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial." *Anderson*, 477 U.S. at 249. Summary judgment is therefore "improper if there is any evidence in the record that could reasonably support a jury's verdict for the non-moving party." *Marvel*, 310 F.3d at 286.

### III.  MINIMUM WAGE REQUIREMENTS

The FLSA and NYLL require every employer to pay its employees compensation at least equivalent to the minimum wage, "regardless of whether that compensation takes the form of commission-only salary or hourly wages." *Hamerslough v. Hipple*, No. 10 Civ. 3056 (NRB), 2012 WL 5290318, at *6 (S.D.N.Y. Oct. 25, 2012) (citing 29 U.S.C. § 206(a)(l)(C); N.Y. Labor Law § 652 (McKinney 2016)). *See also Flick v. Am. Fin. Res., Inc.*, 907 F. Supp. 2d 274, 278 (E.D.N.Y. 2012) (finding that an employee paid on a commission basis "must nonetheless be paid the minimum wage for hours worked," and that commissions may satisfy the minimum wage requirement so long as a proper minimum amount is paid within each relevant pay period) (citing *Chao v. Vidtape, Inc.*, 66 F. App'x 261, 264-65 (2d Cir. 2003); *Biggs v. Wilson*, 1 F.3d 1537, 1542 (9th Cir. 1993)). The FLSA sets the federal minimum wage at $7.25 per hour, and, as of December 2015, the NYLL set the state minimum wage at $9.00 per hour.[3]

According to the New York Hospitality Industry Wage Order, N.Y. Comp. Codes R. & Regs. tit. 12, § 146-1.1(a) (2016) [hereafter Industry Wage Order]: "Every employer in the hospitality industry must pay to each employee, as defined in this Part, at least the minimum wage rates provided in this Part." Of importance here, the order also states: "Employees, as defined in section 146-3.2 of this Title, other than commissioned salespersons, shall be paid hourly rates of pay." *Id.* § 146-2.5. The NYLL defines "commissioned salesperson" as "any employee whose principal activity is the selling of any goods, wares, merchandise, services, real estate, securities, insurance or any article or thing and whose earnings are based in whole or in part on commissions." N.Y. Labor Law § 190 (2008).

---

[3] Defendants assert that for purposes of this Motion, the $9.00 per hour New York standard must be applied as it encompasses the FLSA's rate. (Defs.' Mem. at 6.)

## IV. PLAINTIFFS' CLAIM FOR DAMAGES UNDER THE FLSA AND NYLL

Defendants have made a convincing showing that the female Plaintiffs addressed by this motion qualify as "commissioned salespersons" under New York law. "Although the FLSA fails to define 'commission,' courts have consistently concluded that 'commission' schemes share three distinct but interrelated features: '(1) the employee's compensation must be tied to customer demand or the quantity of sales; (2) the compensation plan must provide performance-based incentives for the employee to increase his or her income; and (3) there must be proportionality between the value of the goods or services sold and the rate paid to the employee.'" *Almanzar v. C & I Assocs., Inc.*, 175 F. Supp. 3d 270, 275 (S.D.N.Y. 2016) (citing *Johnson v. Wave Comm GR LLC*, 4 F. Supp. 3d 423, 442 (N.D.N.Y. 2014)).

The record in this case amply demonstrates that the payments Plaintiffs received for drink sales were "commissions," making Plaintiffs "commissioned salespersons" under the labor laws. (*See* Defs.' Mem. at 7-9.) Indeed, Plaintiffs concede that the female employees were paid via commissions for the sales of drinks. (Pls.' 56.1 Stmt. ¶ 10.) Plaintiffs further concede that Plaintiffs received "on average, at least $40 per night over 4-4.5 hours, and generally more than that – up to as much as $90 per night in drink sales." (*See id.* ¶ 9); (*see also* Opp. Mem. at 3) ("There are thus no disputed issues of fact as to plaintiffs' remuneration.... Instead of questions of fact, we are left only with questions of law—specifically, the legality of the payment scheme.") On the face of it, there seems to be no violation of the minimum wage laws here.

In opposition, Plaintiffs assert that El Ranchito was prohibited by New York state law from paying Plaintiffs in this manner. By their argument, because Defendants' payment scheme is

illegal, Plaintiffs did not receive their minimum wage—regardless of what they were actually paid by the restaurant.[4]

Plaintiffs' argument fails for two reasons. First, Plaintiffs have not identified any violation of New York state law.[5] Plaintiffs argue that the practice of paying employees as commissioned salespersons is generally disallowed in the New York hospitality industry. (*See, e.g.*, Opp. Mem. at 4-5.) While Plaintiffs acknowledge that New York's Hospitality Industry Wage Order explicitly recognizes commissioned salespersons and excludes them from the hourly wage requirement, they argue that "the instant fact pattern" is "decidedly not envisioned" by that Order because "selling alcohol for a commission out of a restaurant or bar in New York" is "patently illegal." (*Id.*)

Specifically, Plaintiffs assert that Defendants violated two provisions of the New York Alcoholic Beverage Control Law ("ABC Law"). Section 111 provides that liquor licenses "shall not be transferable to any other person or to any other premises or to any other part of the building containing the licensed premises...." N.Y. Alcoholic Beverage Control Law § 111 (McKinney 2016). Section 106(6) states that "[n]o person licensed to sell alcoholic beverages shall suffer or permit any gambling on the licensed premises, or suffer or permit such premises to become

---

[4] (*See* Opp. Mem. at 5) ("it is plainly illegal under New York's ABC Law for a licensed liquor business such as El Ranchito to operate in this manner—'paying' females by commission to entertain male patrons and thereby induce them to purchase overpriced alcoholic beverages for the 'employee.'")

[5] In a letter filed after oral arguments on the present motion, Plaintiffs argued for the first time that Defendants do not meet the written records requirement in NYLL § 191(1)(c) for commissioned salespersons. (Pls.' Letter, ECF No. 69, at 1-2.) Setting aside whether Plaintiffs can make such an argument in a sur-opposition letter, Section 191(1)(c) clearly states that while the "agreed terms of employment shall be reduced to writing" and "made available to the commissioner upon request," the penalty for not making those records available upon request is a "presumption that the terms of employment that the commissioned salesperson has presented are the agreed terms of employment." NYLL § 191(1)(c). (McKinney 2007). There is no indication that a failure to keep written terms of employment "preclude[s] them from claiming the exemption" for commissioned salespersons, as Plaintiffs argue, nor is there evidence in the record that Defendants failed to maintain the written terms of employment.

disorderly," and contains additional prohibitions relating to nudity, dwarfism, and fighting. *Id.* § 106(6). Neither of these provisions expressly applies to the facts of this case.

Nevertheless, Plaintiffs argue that El Ranchito is operating a modern-day "clip joint" that is plainly illegal under the ABC Law. The term "clip joint" apparently derives from a Prohibition-era scam in which bars or restaurants would defraud their customers by overcharging for alcoholic beverages. (*See* Opp. Mem. at 6-8.) The case law supporting this violation is extremely thin. Plaintiffs cited a single 1938 case in which a New York court upheld a decision canceling a restaurant's liquor license on the basis of that charge. In *Conomon v. N.Y. State Liquor Authority*, 278 N.Y. 591 (1938), the New York Court of Appeals affirmed without opinion an order canceling a restaurant's liquor license because it was operated as a clip joint. The record indicated that a police officer had been "accosted by a woman who asked such officer if he would buy her a drink at the petitioner's place of business; that the officer accompanied the woman there and purchased several drinks of whisky and brandy and soda for his companion and himself for which he was charged one dollar and fifty cents for each two drinks," and that the woman "was paid fifty per cent of the checks which she accrued while in petitioner's place of business with male friends." *Id.* at 591-92.

In the two other cases cited by Plaintiffs, New York courts actually vacated charges against restaurants for operating clip joints. In *Baby Grand Cafe, Inc. v. Hostetter*, 241 N.Y.S.2d 113, 114 (App. Div. 1963), the Appellate Division reviewed a determination by the State Liquor Authority that a restaurant was operating as a clip joint based on testimony "that unaccompanied women's bills were charged to men who joined them." The court remanded the case, dismissed the charge, and disaffirmed the factual findings on the ground that there was no "proof of overcharge or dilution of drinks." *Id.* In *Mal Restaurant, Inc. v. N.Y. State Liquor Authority*, 425 N.Y.S.2d 583 (App. Div. 1980), the State Liquor Authority charged a restaurant with operating a clip joint in

violation of Section 106(6) of the ABC Law. The record showed that a female dancer asked two state investigators to buy her a drink; when they did so, they were charged $8.50, even though the menu prices for dancer drinks were $4.50 or $4.75. *Id.* at 585. The Appellate Division vacated the disorderly premises charge for lack of substantial evidence. *Id.*

To the extent any principles can be drawn from these decisions, it appears the defining characteristic of a "clip joint" is overcharging customers for drinks, whether by charging a price above the menu price, billing the customer for drinks he did not purchase, or selling the customer a diluted product. *See also Log Cabin Rest, Inc. v. Alpine Wine & Liquor Corp.*, 175 N.Y.S.2d 233, 234 (App. Div. 1958) (noting that customers accused cabaret owner of running a clip joint where the customers received four-fifth quart bottles of whiskey that were erroneously labeled "full quart"). As the Plaintiffs described the scheme in their brief, "a woman would approach a man on the street and induce him to take her to a favorite or local bar. Once there, he would be overcharged for drinks, she would disappear, and he would be left with an inflated bill and no avenue of protest." (Opp. Mem. at 6.) Further, "a common feature of the clip joint is a pricing scheme where, for a male patron, the cost of a drink differs based on who consumes it. If the drink is for him, it is one price. If the drink is for his female companion, the drink is much more expensive." (*Id.* at 8.)

The record in this case does not establish in any way that El Ranchito is a clip joint. While the "hallmark" of a clip joint is overcharging customers, Plaintiffs do not even argue that the purported victims here paid more than other customers or that they were billed for drinks they did not agree to purchase. Rather, they merely claim that male patrons received a "facially inflated price" of $20 for drinks they purchased for Plaintiffs. (*Id.* at 8.) Plaintiffs have put forth no cases supporting that theory. To the contrary, this case seems to fall in line with *C. & I. Rest. Corp. v. Doyle*, 238 N.Y.S.2d 748, 748 (App. Div. 1963), in which the Appellate Division held that "[t]he

evidence does not sustain the finding that petitioner operated a 'clip joint.' While the prices charged for liquor might have been high, there was nothing secret or furtive in their application, nor proof that the prices charged did not accord with the list prices." This is also not like the *Conomon* case, in which the restaurant appears to have conspired with non-employees to overcharge male customers in exchange for a cut of the surplus. *Conomon*, 278 N.Y. at 592. Here, Plaintiffs admit they were employed at El Ranchito and on payroll. In short, this case does not resemble the few historical precedents put forth by the Plaintiffs.

Second, even if the ABC Law were violated, Plaintiffs have cited no grounds for a remedy under the New York or federal labor laws. As Plaintiffs conceded at oral argument on this motion, there is no case law standing for the proposition that a violation of New York's ABC Law triggers a right to recovery under the labor laws. That is not surprising—even if there were a violation of the ABC Law, the proper remedy would not be to award compensation to the Plaintiffs on top of the payments they already received. Indeed, it would be nonsensical to effectively grant Plaintiffs double wages to penalize their employer for violating the ABC Law. If the New York State Liquor Authority finds that El Ranchito is in violation of the ABC Law, it can issue a fine, seek to revoke the restaurant's liquor license, or pursue other administrative remedies. Whether El Ranchito is in compliance with the labor laws is a wholly separate issue.

Here, the record indicates that Plaintiffs received compensation at or above the required minimum wage. As a result, there is no ground for holding that Defendants violated either the FLSA or the NYLL, and partial summary judgment for the Defendants is appropriate.

## V. CONCLUSION

Defendants' motion for partial summary judgment is GRANTED. The Clerk of Court is instructed to close the motion at ECF No. 57.

Dated: February 15, 2017
      New York, New York

SO ORDERED.

*George B. Daniels* (signature)

GEORGE B. DANIELS
United States District Judge